**NOT FOR PUBLICATION**                                    **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| MARK HAGANS, | : | Civil Action No. 10-1951(FSH) |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | **OPINION & ORDER** |
|  | : |  |
| MICHAEL J. ASTRUE, | : |  |
| COMMISSIONER OF SOCIAL SECURITY, | : | Dated: April 8, 2011 |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

---

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff Mark W. Hagans's ("Plaintiff") motion to review the final determination of the Commissioner of the Social Security Administration ("Commissioner") pursuant to the Social Security Act, as amended.  42 U.S.C. § 405(g).  The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, the Court affirms the ALJ's decision.  Also before the Court, Plaintiff's motion to restrain the collection enforcement action by the Social Security Administration ("SSA") during the pendency of this action.[1]

---

[1]  Pursuant to 42 U.S.C. § 423(g), Plaintiff elected to receive continuing disability insurance benefits during the period of appeal, from September 1, 2004 through the decision of the ALJ on February 22, 2009.  If, on appeal, disability is denied, Plaintiff is subject to an overpayment charged by the Social Security Administration.  After the ALJ decision to deny Plaintiff's disability benefits, the Social Security Administration sought to collect for overpayment.  Plaintiff filed a motion to restrain collection enforcement action for overpayment until the final disposition of the matter.  The Court will not decide on the motion to restrain collection enforcement, as this appeal will be decided before any further action will be taken by the Social Security Administration regarding overpayment.

## I.  BACKGROUND

**A.**     **Plaintiff's Medical And Vocational History And Procedural History**

Plaintiff is a 52-year-old man with two years of college education who resides in Newark, New Jersey.  (Tr. 26, 125.)  His past work experience includes employment as a corrections officer, an inspector for a security investigation firm, a machine operator, and a security guard.  (Tr. 25, 181.)  Medical records state that Plaintiff has a history of hypertension, and he has complained of headaches, dizziness, chest pain, shortness of breath and lightheadness.  (Tr. 23.)

On January 26, 2003, Plaintiff suffered from chest pain and was admitted to St. Michael's Medical Center.  (Tr. 378.)  Tests revealed a very large flap in the ascending aorta, consistent with acute type 1 aortic dissection  with severe aortic insufficiency.  (Tr. 378-81.)  On January 27, 2003, Plaintiff underwent emergency surgery to repair the aortic dissection.  (*Id.*)  The operation discovered and removed a very large type I aortic dissection aneurysm.  (Tr. 378-79.)  Plaintiff tolerated the procedure relatively well and was transferred to the ICU in stable condition.  (Tr. 381.)

On February 19, 2003, Plaintiff was discharged from St. Michael's to Rahway Hospital Kindred Unit for rehabilitation.  (Tr. 386.)  Plaintiff's physician at Rahway Hospital, Dr. Matthew Smith diagnosed Plaintiff with an underlying prior cerebrovascular accident,  respiratory failure, hypertension,  and a dysphagia  evaluation.  (Tr. 328.)  Dr. Smith recommended ongoing therapy for Plaintiff's dysphagia as well as speech therapy and possibly ENT intervention to help regain control of his swallowing mechanism.  (*Id.*)  On February 28, 2003, Plaintiff was discharged from Rahway Hospital.  (Tr. 325.)  Plaintiff testified he was subsequently admitted to Inglemoor Care Center of Livingston for further rehabilitation for approximately 3 months.  (Tr. 228.)

2

On February 26, 2003, Plaintiff filed an application for Disability Insurance Benefits due to an abdominal aortic aneurysm, hypertension, and stiffness in the left hand.  (Tr. 63-65, 50.)  In connection with evaluating Plaintiff's disability claim, on April 17, 2003, a Physical Residual Functional Capacity Assessment ("RFC") was completed by a Disability Determination Services physician ("DDS").  (Tr. 312.)  The DDS physician concluded that Plaintiff could occasionally lift or carry a maximum of 10 pounds, could frequently lift or carry less than 10 pounds, could stand or walk less than 2 hours in an 8-hour workday, could sit less than 6 hours in an 8-hour workday, and pushing or pulling was limited in the upper and lower extremities.  (Tr. 313.)  Plaintiff showed signs of occasional postural limitations with climbing, balancing, stooping, kneeling, crouching, and crawling.  (Tr. 314.)  The DDS physician noted that due to shortness of breath and difficulty walking, ladders, ropes and scaffold-climbing should never be performed.  (*Id.*)  Plaintiff's communication skills were limited due to problems with stuttering and word-finding.  (Tr. 315.)  There were no other manipulative or visual limitations noted.  (Tr. 314.)

On April 26, 2003, Dr. Andrew C. Przybyla's case analysis of the RFC report dated April 17, 2003 conditionally affirmed the assessment.  (Tr. 311.)  Dr. Przybyla indicated that Plaintiff had not been examined a full 3 months since the operation which, was against protocol. However, upon a waiver of the 3 month post-operative exam requirement, the RFC assessment would be affirmed.  (*Id.*)

On April 30, 2003, after review of the Plaintiff's medical records, Dr. G. Spitz, a physician for the Office of Disability concluded that further inquiry into Plaintiff's medical records was necessary due to conflicting medical evidence between the exam performed on February 20, 2003 and the DDS's RFC report performed on April 17, 2003.  (Tr. 310.)  The

February 20th exam noted that Plaintiff was able to carry on a conversation, in contrast to the RFC report, which noted that Plaintiff stuttered and had word-finding issues. (*Id.*)

On March 12, 2004, Dr. Dinesh Patel, Plaintiff's treating physician, examined Plaintiff. (Tr. 304-08.) Medical charts from this examination were limited, but it was noted that Plaintiff complained of chest pain. (*Id.*) On April 16, 2004, a report of contact was completed by Dr. Burton Gillette. (Tr. 301.)

Plaintiff began visiting Dr. Stephen J. Levine, a chiropractor, on April 29, 2004 for an injury unrelated to his aortic aneurysm surgery. Plaintiff alleged that on April 26, 2004, a pile of wood fell on his chest and he was knocked to the ground. (Tr. 295.) Dr. Levine concluded that Plaintiff had no limitations as to lifting, carrying, sitting, pushing or pulling or any other limitations, and was able to do work-related activities. (Tr. 296.)

On May 16, 2004, Dr. George Bousvaros with the Office of Disability concluded that the Plaintiff's medical reports were wholly inadequate to assess Plaintiff's current condition except for the scanty treating physician's report. (Tr. 292.) Dr. Bousvaros noted that at a minimum, neurological findings, an EKG, and a chest x-ray were needed for his evaluation. (*Id.*) On May 17, 2004 the Disability Quality Branch requested corrective action. (Tr. 287-88.)

Dr. R.C. Patel completed a report evaluating the Plaintiff's physical condition on August 31, 2004, which indicated medical improvement. (Tr. 279-82.) The EKG showed normal sinus rhythm without murmur or gallop. (Tr. 280.) The chest x-ray showed that Plaintiff's lungs were clear, and there were no indications of heart failure. (Tr. 281.) Dr. Patel noted that Plaintiff did complain of chest pain, but it was usually relieved by Tylenol. (Tr. 279.) Examination of the lumbosacral spine showed no noticed deformities, but Dr. Patel noted a possibility of arthritis of

the neck and lumbosacral spine.  (Tr. 281.) Plaintiff could perform fine and gross movements in both hands, and there were no gross neurological deficits.  (*Id.*)

Reviewing Plaintiff's supplemented medical records, Dr. Gillette prepared a physical RFC assessment on September 15, 2004.  (Tr. 271-78.)  The RFC assessment showed that the Plaintiff had exhibited medical improvement since the last RFC assessment on April 17, 2003.  Dr. Gillette found that Plaintiff could now occasionally lift 20 pounds, and frequently lift 10 pounds. (Tr. 272.)  Further indicating medical improvement was Plaintiff's ability to stand or walk for at least 4 hours in an 8-hour workday, and sit at least 6 hours in an 8-hour workday.  (Tr. 272.)  Dr. Gillette also noted that Plaintiff exhibited no limitations in the upper or lower extremities (Tr. 272.), an improvement from the April 17th RFC assessment.  (Tr. 313.)  On the same day, a development summary worksheet was submitted by Mr. Ernest Uzondu, a DDS adjudicator assigned to the case.  (Tr. 284.)  The summary concluded that Plaintiff could not perform his previous employment as an armed guard, but there were alternative jobs that Plaintiff could perform.  (*Id.*)  Therefore, Plaintiff was found not disabled by Rule 201.21, and his disability benefit ceased.  (*Id.*)

On September 21, 2004, the Social Security Administration determined that Plaintiff's disability had improved and, accordingly, he was no longer eligible for disability insurance benefits.  (Tr. 50-52.)  Plaintiff requested reconsideration of this determination on December 3, 2004.  (Tr. 48-49.)

While Plaintiff's administrative appeal was pending, Plaintiff continued to see his physicians.  (Tr. 196-213.)  Plaintiff was evaluated on August 30, 2005 by Dr. Stuart Belenker, a psychiatrist with the University of Medicine and Dentistry of New Jersey.  (Tr. 196.)  Plaintiff

5

was diagnosed with moderate recurrent major depressive disorder marked with complaints of poor memory.  (Tr. 203.)  The Plaintiff's outpatient treatment was terminated on January 17, 2007.  (Tr. 196.)

Dr. David Tiersten evaluated the Plaintiff on March 16, 2006.  Dr. Tiersten noted that Plaintiff complained of chest pains and acknowledged his prior heart surgery.  (Tr. 254.)  Plaintiff also complained of low back pain on the left side and pain from his knees to his feet.  (*Id.*)  Despite Plaintiff's complaints, Dr. Tiersten concluded that Plaintiff had no specific limitations derived from the evaluation, and suggested the musculoskeletal limitations, if any, be derived from data such as imaging studies or electromyelography.  (Tr. 257.)  The chest x-ray indicated that the aorta was markedly unfolded, and no active lung disease was found.  (Tr. 261.)  The lumbar sacral spine x-ray noted disc space narrowing, and straightening of lordotic curve.  (*Id.*)

On July 14, 2006 a physical RFC assessment was performed on the Plaintiff.  (Tr. 246.)  The primary diagnosis was post-operative open heart surgery, and a secondary diagnosis of lumbar spine degenerative disc disease.  (*Id.*)  The exertional limitations concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand for at least 4 hours in an 8-hour day, and sit for at least 6 hours in an 8-hour day.  (Tr. 247.)  Plaintiff's exertional limitations were the same as those indicated on the September 15, 2004 RFC assessment.

Dr. Ramesh Patel examined the Plaintiff on August 7, 2006, and concluded that Plaintiff was disabled.  (Tr. 25, 230.)  However, the report lacked any objective medical evidence such as clinical signs, laboratory findings, the results on any testing, medical assessment, treatment, response to treatment and prognosis for recovery.  (Tr. 230.)

After Plaintiff's request for reconsideration of disability benefits, a hearing was scheduled for May 17, 2007.  (Tr. 45-47.)  On May 31, 2007, the determination that Plaintiff was no longer eligible for disability benefits as of September 1, 2004 was upheld after the hearing by a State agency Disability Hearing Officer.  (Tr. 43-44.)  Subsequently, Plaintiff filed a timely written request for a hearing before an Administrative Law Judge ("ALJ").  (Tr. 33.)  The request was granted and Plaintiff was informed of his right to counsel.  (Tr. 41.)  On May 14, 2008, Plaintiff appeared unrepresented by counsel before ALJ Donna Krappa.  (Tr. 611.)  The hearing was adjourned so the Plaintiff could obtain counsel.  (*Id.*)  On September 22, 2008, Plaintiff appeared before ALJ Krappa, again without counsel.  (*Id.*)  Plaintiff was informed of the right to representation, but chose to testify without the assistance of an attorney or other representative. (*Id.*)  Pat Green, a vocational expert, testified by telephone at the hearing.  (Tr. 646-53.)

On February 26, 2009, ALJ Krappa found that Plaintiff's disability ended as of September 1, 2004.  (Tr. 27, 15-17.)  Plaintiff requested that the Social Security Appeals Council review the ALJ's decision on March 18, 2009.  (Tr. 14.)  On May 21, 2009, the Appeals Council denied Plaintiff's request for review, rendering the ALJ Krappa's decision the final decision of the Commissioner.  (Tr. 9-12.)  Plaintiff brought this action on April 16, 2010 after having exhausted all other remedies.  (Comp. 1.)

**B.     The Statutory Standard For Continuing Disability**

Once a determination of eligibility for disability benefits has been made, continued entitlement to such benefits must be reviewed periodically.  20 C.F.R. § 404.1594(a).  A benefit recipient, like Plaintiff, may subsequently be deemed ineligible for benefits if it is determined that his disability has ceased, when that determination is supported by substantial evidence of

7

medical improvement, and the claimant is able to engage in substantial gainful activity.  42 U.S.C. § 423(f)(1).  To determine whether a disability has ceased, the Commissioner applies the following sequential analysis prescribed by Social Security regulations:[2]

Step One: Substantial Gainful Activity.  The Commissioner must first determine whether the claimant is engaging in substantial gainful activity.[3]  If the claimant is performing substantial gainful activity and any applicable trial work period has been completed, the claimant is no longer disabled.  20 C.F.R. § 404.1594(f)(1).

Step Two: Severe Impairment.  At Step two, the Commissioner must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If claimant does, his disability continues.  20 C.F.R. §§ 404.1594(f)(2), 416.992(b)(5)(i).

Step Three: Medical Improvement.  Next, the Commissioner must determine whether medical improvement has occurred.  20 C.F.R. § 404.1594(f)(3).  Medical improvement is any decrease in medical severity of the impairments as established by improvement in symptoms, signs and/or laboratory findings.[4]  20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i).  If medical

---

[2]  20 C.F.R. § 404.1594(f) (assessing medical improvement in disability claims); *see also Reefer v. Barnhart*, 326 F.3d 376, 378 n.1 (3d Cir. 2003) (stating that a claimant's eligibility for benefits ceases with substantial evidence of medical improvement).

[3]  "Substantial gainful activity" is work activity that involves "doing significant physical or mental activities," done "for pay or profit."  20 C.F.R. §§ 404.1572, 416.972.

[4]  The appropriate legal standard with which to review medical improvement determinations was set forth in *Kuzmin v. Schweiker*, 714 F.2d 1233 (3d Cir. 1983).  There, the Third Circuit held that once the claimant has introduced evidence that his condition remains the same as it was for the period already determined to be under disability, the burden then shifts to the defendant to prove "that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity."  *Id.* at 1237.  This standard was upheld in

8

improvement has occurred, the analysis proceeds to Step Four.  If not, the analysis proceeds to

Step Five.  20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(1)(ii).

Step Four: Ability To Work.  At Step Four, the Commissioner must determine whether

medical improvement found in Step Three is related to the ability to work.  20 C.F.R. §§

404.1594(f)(4), 416.994(b)(5)(iii).  Medical improvement is related to the ability to work if it

results in an increase in the claimant's RFC.  20 C.F.R. §§ 404.1594(b)(3), 416.994(b)(1)(iii).  If

the improvement results in such an increase, the analysis proceeds to Step Six.  If not, the

analysis proceeds to Step Five.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

Step Five: Exceptions to Medical Improvement.  At Step Five, the Commissioner

determines if one of two sets of exceptions to medical improvement applies.[5]  20 C.F.R. §§

404.1594(f)(5), 416.994(b)(5)(iv).  If one of the exceptions in group one applies, the analysis

proceeds to the next Step.  20 C.F.R. §§ 404.1594(d), 416.994(b)(3).  If one of the exceptions

---

*Chrupcala v. Heckler*, 829 F.2d 1269, 1274 (3d Cir. 1987), where the Third Circuit stated that "[f]airness would certainly seem to require an adequate showing of medical improvement whenever the ALJ determines that disability should be limited to a specific period."  *Id.*

[5]  The Commissioner need only consider these exceptions if there is neither medical improvement nor medical improvement related to ability to work.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).  If either condition is present, the analysis proceeds to Step Six.  *Id.*
The first group of exceptions applies where substantial evidence  shows any of the following: (1) that the claimant "is [the] beneficiary of advances in medical or vocational therapy or technology;" (2) that the claimant has "undergone vocational therapy;" (3) that "based on new or improved diagnostic or evaluative techniques [the] impairment(s) [are] not as disabling as…considered to be at the time of the most recent favorable decision;" or (4) "that any prior disability was in error."  20 C.F.R. §§ 404.1594(d), 416,994(b)(3).
    The second set of exceptions applies where substantial evidence shows any of the following: (1) that "a prior determination or decision was fraudulently obtained;" (2) that the claimant has not cooperated with Social Security officials; (3) that the claimant cannot be found; or (4) that the claimant failed to follow the prescribed treatment.  20 C.F.R. §§ 404.1594(e), 416.994(b)(4).

from the second group applies, the claimant's disability ends.  20 C.F.R. §§ 404.1594(e), 416.994(b)(4).  If no exception applies, the claimant's disability continues.  20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(5)(iv).

Step Six: Severity And Ability To Do Basic Work.  At Step Six, the Commissioner must determine whether the claimant's impairments in combination are severe.  20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v).  If the claimant's current impairments in combination do not significantly limit the claimant's physical or mental abilities to do the "basic work," these impairments will not be considered severe in nature.[6]  There, the disability will be found to have terminated.  *Id.*  If there is significant limitation of the claimant's ability to do basic work activities, the analysis proceeds to the next Step.  *Id.*

Step Seven: Past Relevant Work.  At Step Seven, the Commissioner must determine if the claimant can perform the past relevant work.  20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi).  If the claimant is able to do past relevant work, the disability has ended.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the last Step.  *Id.*

Step Eight: Other Work.  At the final Step, the Commissioner must determine whether other work exists that the claimant can perform, given his RFC, age, education, and past work experience.  20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).  If the claimant can perform other work based on these factors, the disability terminates.  *Id.*  If the claimant cannot perform other work, his disability continues.  *Id.*

---

[6]  "Basic work" is defined as "the abilities and aptitudes necessary to do most jobs," including abilities such as "walking, standing, pushing, pulling, reaching, and carrying," and "nonexertional abilities," such as "seeing, hearing, speaking, remembering, using judgment, dealing with changes and dealing with both supervisors and fellow workers."  20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(vi).

10

C.      **The ALJ's Decision**

Applying this eight-step analysis, and upon review of the entire record, ALJ Krappa first found that Plaintiff's most recent favorable medical decision finding Plaintiff disabled, also known as the CPD, was May 1, 2003.  (Finding 1, Tr. 20.)  At the time of the CPD, Plaintiff suffered from the medically determinable impairments of abdominal aortic aneurysm and essential hypertension, depriving Plaintiff of the capacity to engage in even less than a full, complete, and wide range of sedentary work activity.  (Finding 2, Tr. 20.)

At Step One, the ALJ found that the Plaintiff did not engage in substantial gainful activity through September 1, 2004, the date the Plaintiff's disability ended.  (Finding 3, Tr. 20.)  At Step Two, the ALJ found that since September 1, 2004, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[7]  (Finding 5, Tr. 21.)

At Step Three, the ALJ found that Plaintiff exhibited medical improvement as of September 1, 2004.  (Finding 6, Tr. 21.)  For this finding, the ALJ determined that there was a decrease in the severity of Plaintiff's impairments as of September 1, 2004, based on the decrease in signs, symptoms, and/or laboratory findings since the medical record was devoid of any medical treatment, clinical or diagnostic findings or functional limitations related to Plaintiff's

---

[7]  In making this finding, the ALJ cited Listing 4.10 (aneurysm of aorta), and found that Plaintiff did not meet the requirements since he did not experience dissection not controlled by prescribed therapy.  (Finding 5, Tr. 21.)  The ALJ stated that Plaintiff's diagnosed hypertension did not meet the criteria for Listing in Section 4.02 or 4.04, because the Plaintiff has not developed by heart failure or ischemic heart disease, with symptoms due to myocardial ischemia, while on a regimen of prescribed treatment, with sign or symptom limited exercise tolerance test, or three (3) separate ischemic episodes, or coronary artery disease demonstrated by angiography. (Finding 5, Tr. 21.)

prior abdominal aortic aneurysm surgery and his diagnosed hypertension was not accompanied by any abnormal clinical findings, secondary complications in the form of target, end-organ damage or diagnostic abnormalities.  (Finding 6, Tr. 21.)

At Step Four, the ALJ found Plaintiff's medical improvement to be related to his ability to work, because it resulted in an increase in Plaintiff RFC as of September 1, 2004.  (Finding 8, Tr. 25.)  The ALJ determined that as of September 1, 2004, Plaintiff could perform a limited range of light work.  (Finding 8, TR. 25.)  In evaluating Step Four, the ALJ cited, *inter alia*, the reports of Plaintiff's treating and DDS physicians, that Plaintiff was able to lift 10 pounds frequently and 20 pounds occasionally, was able to sit for prolonged periods with certain limitations including 3 breaks during the workday, and simple, unskilled and repetitive tasks that were low stress. (Finding 7, Tr. 21-22.)

Given that relation to the ability to work, the ALJ appropriately proceeded to Step Six, and found that as of September 1, 2004, Plaintiff's medically determined impairments including his diagnosed hypertension, low back disorder and major depression were "severe," which caused more than "minimal" limitation in the Plaintiff's ability to perform basic work activities. (Finding 9, Tr. 25.)  At Step Seven, the ALJ found that Plaintiff was not able to perform his past relevant work, despite the medical improvement.  (Finding 10, Tr. 25.)  After testimony from Pat Greene, a vocational expert witness at the hearing, the ALJ found that Plaintiff's past relevant work as a corrections officer, an inspector for a security investigation firm, machine operator and as a security guard required some level of skill, and, accordingly, Plaintiff could not return to any of those jobs under Plaintiff's current RFC.

12

At the last Step, the ALJ found Plaintiff able to perform a significant number of jobs in the national economy.  (Finding 14, Tr. 26.)  In making this finding, the ALJ considered Plaintiff's age, education, work experience, and RFC, and applied the Medical-Vocational Rule 202.21, which directed a finding of "not disabled."  *Id.*  Accordingly, the ALJ denied Plaintiff's claim for benefits after September 1, 2004.  *Id.*

## II. DISCUSSION

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court must review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings.  *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more that a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record.  *Simmonds v. Hecker*, 807 F.2d 54, 58 (3d Cir. 1986).

### B.    Review of the ALJ's Determination

Plaintiff challenged the decision of the Commissioner on the grounds that the ALJ's denial of benefits is not supported by substantial evidence.  Specifically, he argues that the ALJ erred by:  (1) applying a RFC not supported by substantial evidence, (Pl. Br. 14-18);  (2) finding Plaintiff in the "younger person" category rather than the "person closely approaching advanced age" category, (Pl. Br.14-18);  (3) failing to adequately consider Plaintiff's psychiatric treatment or the neurological residuals of his disease process, (Pl. Br. 19-20);  and  (4) failing to adequately

13

consider the Plaintiff's credibility at the hearing, (Pl. Br. 21-22).  In addition, Plaintiff requests the opportunity to present his case with the assistance of counsel, (Pl. Br. 13); and that new and material evidence warrants a remand (Pl. Br. 23-24).  The Court shall address each argument in turn.

      1.    <u>Plaintiff's Residual Functional Capacity</u>

The ALJ found at Step Four that Plaintiff exhibited medical improvement related to the ability to work, and he could perform "light work" which included tasks that were simple, repetitive, unskilled, and low stress.  (Finding 7, Tr. 21-25.)  Plaintiff argues that the ALJ's RFC assessment at the "light" level rather than the "sedentary" level was without any evidentiary basis and the ALJ confused the category levels set forth in the regulations, contrary to state agency determinations.  (Pl. Br. 15.)  Specifically, Plaintiff argues that the ALJ erred when she concluded that Plaintiff could stand for 6 hours, when the RFC reports indicate that the Plaintiff could stand on his feet for 4 hours.  In addition, the ALJ's determination that Plaintiff is limited to a job that can be performed while his feet are raised on a footstool was inconsistent with an individual that can stand for 6 hours.

The ALJ's detailed decision evidences that she properly concluded Plaintiff's residual functional capacity at the "light" level.  The ALJ considered all symptoms and the extent to which those symptoms could be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. The ALJ also considered opinion evidence in accordance with 20 C.F.R. § 404.1527, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

14

The ALJ concluded that as of September 1, 2004, Plaintiff had the residual functional capacity to perform the exertional demands of light work as defined in 20 C.F.R. 404.1567(b).[8] The ALJ specified as an example, simple tasks that were associated with light work such as the ability to lift or carry 10 pounds frequently and 20 pounds occasionally, ability to perform unlimited pushing and pulling, the ability to sit for a total of 2 hours, the ability to stand or walk for a total of 6 hours.  This finding was qualified in the Plaintiff's ability to perform jobs that permits 3 breaks with 15 minute durations, did not require climbing of ladders or ropes, and can be performed while feet are raised on a footstool.

While the RFC assessments in the Plaintiff's medical record show that he can stand for 4 hours, not 6 hours, there is still substantial evidence in the record to support the ALJ's determination that Plaintiff can perform a job that is simple, unskilled, repetitive and low stress. Tests performed on Plaintiff in 2004 and 2006 revealed a regular sinus rhythm without any audible murmur,[9] rubs[10] or gallops;[11] a resting EKG was negative for evidence of cardiac

---

[8]  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[9]  An audible sound of the heart typically indicating a functional or structural abnormality.

[10]  A sound heard in auscultation that is produced by the friction of one structure moving against another.

[11]  An abnormal heart rhythm marked by the occurrence of three distinct sounds in each heartbeat like the sound of a galloping horse.

involvement; and normal chest x-rays with no signs of heart failure. The ALJ concluded that Plaintiff's daily living was unrestricted, since he informed consultative physician that he showers, dresses, watches television, listens to the radio, rests on the porch, and plays chess. Furthermore, Plaintiff testified at the hearing that: he is able to take public transportation; he reads the newspaper; he may attend a doctor's appointment; he actively participates in church services 3 times a week; he attends church on Sunday for 3 hours; he reads the Bible or prays; and he sometimes goes to the park and stretches. In addition, Plaintiff had a normal gait and stance and he walked without any assistive walking device.

In addition, the ALJ also considered the opinion of Dr. Patel, Plaintiff's treating internist, who stated on August 7, 2006 that Plaintiff was still disabled. The ALJ rejected that opinion since the medical report submitted by Dr. Patel, only contained a recitation of diagnoses and symptoms unsupported by objective medical evidence. (Finding 7, Tr. 25.) The disability report submitted by Dr. Patel contains only a few facts regarding Plaintiff's aortic aneurysm surgery, and statement that Dr. Patel "didn't know" whether the Plaintiff might improve. (Tr. 230-231.) The report lacked any objective medical evidence required by law such as clinical signs, laboratory findings, the results on any testing, medical assessment, treatment, response to treatment and prognosis for recovery. Viewing this report, there is substantial evidence to support the ALJ's decision to reject this opinion evidence in light of the entire record.

For the foregoing reasons, the ALJ's determination that Plaintiff could perform light level activities, which limited Plaintiff to simple, unskilled and repetitive job tasks that were low stress in nature, is supported by substantial evidence in the record.

2.     Plaintiff's Credibility

Next, the Plaintiff argues that the ALJ's evaluation of the credibility of his testimony at the hearing lacks the specificity to meet the substantial evidence standard of review.  (Pl. Br. 21.) Plaintiff further contends that the ALJ's failure to specifically indicate which testimony was the truth and which was a lie was inappropriate.  (Pl. Br. 21-22.)

Under the Social Security regulations, an individual's statement(s) about his or her symptoms is not enough in itself to establish the existence of a physical or mental impairment or that the individual is disabled.  (SSR 96-7p.)  To determine the Plaintiff's credibility, the ALJ followed a two-step process for evaluating symptoms.  SSR 96-7p.  First, the ALJ considered whether there was an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that could be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to have produced the individual's pain or other symptoms.  SSR 96-7p.  Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the ALJ evaluated the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons

17

about the symptoms and how they affect the individual, and any other relevant evidence in the case record.  SSR 96-7p.

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the ALJ must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. SSR 96-7p.  In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone.  The ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; the treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  20 CFR §§ 404.1529(c), 416.929(c).

After considering the evidence in the record, the ALJ found that the Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment.  (Tr. 22.)

The ALJ noted that Plaintiff's abdominal aortic aneurysm condition represented a non-severe impairment, and he was not significantly limited in his physical abilities to perform basic work-related activities.  (Tr. 22.)  The ALJ noted that there was no evidence in the record that supported a need for regular medical treatment after surgery, residual symptoms or functional limitations with Plaintiff's vascular disorder.

The Plaintiff has alleged continuing disability on the basis of right knee pain, stiffening and cramping; however, there is no objective medical evidence to support his claim for continuing disability.  Physical examination of the lower extremities did not reveal any muscular atrophy, cyanosis, clubbing, edema or calf tenderness, and reflexes and sensation were normal.  There is no evidence of any redness, heat, swelling, effusion, contractures, ankylosis or thickening in the lower extremities.  Plaintiff's range of motion in both knees was normal, and joints were stable and non-tender.

Plaintiff's diagnosed hypertension and complaints of headaches, dizziness, chest pain, shortness of breath, and lightheadedness, did not preclude all work activity.  The clinical and diagnostic tests results concluded that Plaintiff has uncomplicated hypertension with no evidence of any secondary, target end-organ damage.  Examinations of the Plaintiff's heart in 2004 and 2006 revealed a regular sinus rhythm without any audible murmur or gallops, and a resting EKG performed was negative for evidence of cardiac involvement.  Chest x-rays in 2004 and 2006 were normal with no signs of heart failure.  Plaintiff's physicians noted that he had "atypical" chest pain, but that it was unrelated to heart disease.  Furthermore, although Plaintiff did complain of chest pain, it was alleviated by Tylenol, a non-prescriptive, over-the-counter medication.  Medical records show that Plaintiff's daily activities are unrestricted and he was able

19

to shower, dress, watch television, listen to the radio, rest on his porch, play chess, take public transportation, read the newspaper, attend church services 3 times a week, and attend doctor's visits.

After review of the entire post-cessation date medical record, the ALJ concluded that the only medically determinable impairment physically impacting the Plaintiff's capacity for work activity was his alleged back disorder.  Plaintiff's medical record revealed possible "arthritis of the lumbrosacral spine" in 2004 and disc space narrowing and straightening of the lordotic curve in 2006.  Plaintiff's medical record only shows one positive clinical finding of the alleged back disorder which is a mildly diminished flexion of the trunk (60-70 degrees).  Plaintiff has no deformities of the lumbrosacral spine architecture, physiological and equal deep tendon reflexes of both lower extremities, and no motor or sensory deficits.  Other evidence relied upon by the ALJ include no specific clinical findings/signs from Plaintiff's manipulative chiropractic therapy from October 2004 to December 2005.  The ALJ concluded that Plaintiff's limited flexion of the trunk coupled with his use of Endocet (Oxycodone) and Percoscet, extremely potent addictive narcotic-opioid analgesic medications, restricted him to light level of physical exertion with limitations and rendered his low back pain partially credible.  The ALJ also noted that the Plaintiff sat for the duration of the hearing without rising, had a normal gait and stance and that he walks without any assistive walking device.

For the foregoing reasons, the ALJ's determination that Plaintiff's alleged medical claims were partially credible is supported by substantial evidence in the record.

3.   <u>Mental Impairments</u>

Next, Plaintiff contends that the ALJ did not adequately consider Plaintiff's psychiatric treatment or the neurological residuals of his disease process.  (Pl. Br. 19.)  Specifically, the Plaintiff's Global Assessment of Function (GAF) was not properly considered and the agency failed to order a psychiatric or psychological consultative evaluation to assess the residual functional capacity.

The ALJ concluded that as of September 1, 2004, the Plaintiff's medically determined impairments included major depression, which caused more than a "minimal" limitation on the Plaintiff's ability to perform basic work activities.  (Finding 9, Tr. 25.)  Plaintiff's initial psychological evaluation at the University of Medicine and Dentistry of New Jersey performed by Dr. Belenker on August 31, 2005, diagnosed Plaintiff with a GAF of 51, which concludes moderate symptoms or difficulty in functioning.  (Tr. 203.)  Plaintiff's termination summary on January 17, 2007 stated Plaintiff had attended several individual sessions, couples contact and psychiatric assessment and Plaintiff reported less depression.  Furthermore, the summary noted that Plaintiff had "good cognitive and social-interpersonal functioning" and no then-current problems were identified.  The ALJ noted that since the date of cessation, the Plaintiff had not required multiple inpatient psychiatric hospital admissions, frequent hospital emergency room visits for treatment of acute bouts of depression or any other medical treatment for depression, since the treatment regimen was terminated in January 2007.

For the foregoing reasons there was substantial evidence in the record to conclude that the ALJ adequately considered Plaintiff's psychiatric treatment and the neurological residuals of his disease process.

4.      Application of Age Categories

Next, the Plaintiff contends that the ALJ erred in her application of the age categories as defined by 20 C.F.R. § 404.1563.  Plaintiff argues that the ALJ should have placed him in the category of "person closely approaching advanced age" category (age 50-54), instead of "younger person" (age 18-49).  In support of the claim, Plaintiff stated that he was 50 years old at the time the ALJ's decision was issued, and therefore should be viewed in the "person closely approaching advanced age" category.

When making a determination, the Social Security Administration will use the age category that applies to an individual during the period for which disability must be determined.  Plaintiff's disability period began on January 30, 2003 and was terminated on September 1, 2004.  As of the termination date, Plaintiff was 46 years old, and accordingly, was placed in the "younger person" category by the ALJ.  The ALJ's decision that Plaintiff was a "younger person" is supported by substantial evidence in the record.

5.      Assistance of Counsel

Plaintiff contends that since he appeared before the ALJ without the assistance of counsel, Plaintiff should have the opportunity to present his case with counsel.  (Pl. Br. 10-13.)  Plaintiff requests that this Court scrutinize the entire record very carefully.  (Pl. Br. 10-13.)

As the record indicates, Plaintiff was unrepresented at his hearing before the ALJ on September 22, 2008.  Although Plaintiff was unrepresented at the hearing, there is substantial evidence in the record that Plaintiff was aware of his right to counsel, and had several opportunities to retain counsel.  Therefore, this Court rejects Plaintiff's request to present case with assistance of counsel.

Prior to the hearing before the ALJ, Plaintiff received several notices regarding his right to counsel.  On May 31, 2007, Plaintiff received a notice from the SSA which indicated the disability hearing decision had been made, and he was denied continuing benefits.  The notice stated Plaintiff could appeal the decision before an ALJ, had the right to counsel, and indicated where help could be found.  Plaintiff appealed the decision, and on June 25, 2007, received a similar letter from the SSA informing him of the hearing process, and specifically, his right to representation and possible organizations that could help.  On April 9, 2008, ALJ Krappa issued a Notice of Hearing to Plaintiff, again indicating Plaintiff's right to representation scheduled for May 14, 2008.

On May 14, 2008, Plaintiff appeared unrepresented by counsel before ALJ Krappa.  (Tr. 611.)  The hearing was adjourned so Plaintiff could obtain counsel.  (*Id.*)  On August 16, 2008 ALJ Krappa sent Plaintiff an Amended Notice of Hearing scheduled for September 22, 2008.  On September 22, 2008, Plaintiff appeared before ALJ Krappa, again without counsel.  (*Id.*)  Plaintiff was informed of the right to representation, but chose to testify without the assistance of an attorney or other representative.  (*Id.*)

Plaintiff had multiple opportunities to retain counsel, and was informed his right to do so.  For the foregoing reasons, Plaintiff is denied the opportunity to present his case again with the assistance of counsel.

6.    New and Material Evidence

Finally, Plaintiff contends that new and material evidence warrants a remand.  Plaintiff submits copies of Beth Israel Hospital records for admission from March 26, 2009 to March 30, 2009 and January 22, 2010 to February 22, 2010.  Specifically, Plaintiff argues that the medical

records demonstrate ongoing congestive heart failure and back problems, and in combination with Plaintiff's psychiatric problems, a remand is appropriate.

Although this evidence was not presented before the ALJ at the hearing, the Social Security Act permits the Court, at any time, to order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g). The Commissioner shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the Court any such additional and modified findings of fact and decision and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based. 42 U.S.C. § 405(g).

To support a remand, the new evidence must first be new and not merely cumulative of what is already in the record. Second, the evidence must be material, meaning it must be relevant and probative. The materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Commissioner's determination. An implicit materiality requirement is that the new evidence relates to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *Szubak v. Sec'y of HHS*, 745 F.2d 831, 833 (3d Cir. 1984).

24

This Court is permitted to admit evidence if good cause can be shown; however, in this case it does not appear that Plaintiff can show good cause. The record shows that Plaintiff's last RFC assessment was performed on July 14, 2006. Other than the certification of disability form submitted by Dr. Patel on August 7, 2006, which was rejected by the ALJ, the record is devoid of any subsequent medical records from August 7, 2006 until March 26, 2009. One month prior to the March 26th medical report, ALJ Krappa issued her decision rendering the Commissioner's decision final. Plaintiff gives no explanation as to why the record is devoid of any medical reports for the 3 year period while the hearing and the decision were pending.

Assuming, *arguendo*, a good faith basis, the evidence fails to meet the materiality requirement. Materiality requires that the new evidence would have altered the ALJ decision, and that it relate to the period that the benefits were denied. Plaintiff's disability period began on January 30, 2003 and terminated on September 1, 2004. The new medical evidence that the Plaintiff's requests this Court to incorporate into the record post-dates, March 26, 2009 and January 22, 2010, the disability period that is at issue in this case by approximately five years. If the new evidence suggests that Plaintiff's condition may have become disabling subsequent to the cessation of benefits, or there is a new impairment, Plaintiff must file a new application. The Commissioner has indicated that Plaintiff has the right to file a new application under Title II of the Social Security Act, for the new disability period. (Commissioner's Sur-Reply 2.)

For the foregoing reasons, Plaintiff's new and material evidence does not warrant a remand.

25

## III.  CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is no longer disabled is based on substantial evidence in the record.  Accordingly, the Court will **AFFIRM** the Commissioner's decision.

Therefore, **IT IS** on this 8th day of April, 2011, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.


s/ Faith S. Hochberg
Hon. Faith S. Hochberg, U.S.D.J.